Petitioner, America's First Credit Union, seeks a writ of mandamus to compel the *Page 1326 
trial court to order the disqualification of an entire law firm, so as to prevent the firm from representing Frederick Barkley in his suit against petitioner.
Barkley was charged with theft of property. The charge was nol-prossed. Barkley subsequently sued the petitioner for malicious prosecution. Barkley was represented by Robert Clark in both cases. After the malicious prosecution suit was filed, Lloyd Copeland, a Mobile County assistant district attorney at the time criminal charges were pending against Barkley, joined Clark's law firm and began helping Clark represent Barkley. Petitioner moved to disqualify the entire law firm. The trial court disqualified Copeland, but refused to disqualify the firm. The order succinctly states the trial court's rationale:
 "The basis of the motion is that one of Plaintiff's attorneys, W. Lloyd Copeland, was a member of the staff of the Mobile County District Attorney at the time Plaintiff was the subject of the prosecution made the basis of Plaintiff's present complaint. One of Mr. Copeland's present partners, Mr. Clark, represented Plaintiff in the criminal proceedings. Mr. Copeland did not play any active part in the prosecution of the Plaintiff or the decision to terminate that prosecution.
 "It does not appear that either the Disciplinary Rules or the Canons of Ethics [of the Code of Professional Responsibility of the Alabama State Bar] directly prohibit Mr. Copeland's representation of the Plaintiff under the circumstances. Certainly, the Court neither believes nor suggests that his activity is in any way unethical or improper.
 "However, it appears to the Court that this situation might give 'the appearance of impropriety even if none exists.' Ethical Consideration 9-3. Therefore, the motion is granted insofar as it is directed to Mr. Copeland, but is denied as concerns Mr. Clark and Mr. Deen."
Ordinarily, mandamus is not the proper vehicle to seek review of a trial court's failure to disqualify counsel, but we have recognized an exception in Ex parte Taylor Coal Co.,401 So.2d 1 (Ala. 1981). As in Taylor, because a question of first impression in this Court is presented, we will review the trial court's action at this time.
Disciplinary Rule 9-101(B) states: "A lawyer shall not accept private employment in a matter in which he had a substantial responsibility while he was a public employee." The trial court found that Copeland had no "substantial responsibility" with respect to the criminal prosecution of Barkley, and the record supports that finding. However, the trial court went on to find that the facts might give rise to an "appearance of impropriety even if none exists." Petitioner maintains that DR 5-105(D) requires that an entire firm be disqualified once a member of the firm becomes disqualified.
First, we note that by its plain terms DR 5-105(D) requires vicarious disqualification only if the individual attorney is required to "withdrawn from employment under DR 5-105." However, Definition (7) of the Code of Professional Responsibility states: "Unless the context otherwise requires, wherever in these rules the conduct of a lawyer is prohibited, all lawyers associated with him are also prohibited."
Petitioner and respondents agree that Alabama does not employ such a strict interpretation of DR 5-105(D) that an entire firm is always disqualified when one lawyer is disqualified. Rather, they say that this state employs the "common sense" approach to questions of vicarious disqualification; that approach to the question of whether, upon a lawyer's change of firms his knowledge is automatically imputed to members of the new firm, is represented by such cases as Silver Chrysler-Plymouth, Inc. v.Chrysler Motors Corp., 518 F.2d 751 (2d Cir. 1975). See alsoTerry v. State, 424 So.2d 710 (Ala.Crim.App. 1982), in which, as the parties point out, our Court of Criminal Appeals has adopted that approach. The office of the general counsel and the Disciplinary Commission of the Alabama State Bar have also adopted the "common sense" approach. 45 Ala. Law. 306 (1984). The parties have presented us no authority from this Court addressing *Page 1327 
this issue, and our independent research reveals none.
However, we agree with the Court of Criminal Appeals that the "common sense" approach is appropriate:
 "This approach, of grafting Canon 9 principles onto DR 5-105(D), [which would result in a strict interpretation of DR 5-105(D) being employed] has been criticized as unduly restrictive and out of touch with the realities of large modern law firms whose members are, more often than not, unaware of the confidential information imparted to other members of the firm. See Note, 44 Fordham L.Rev. 130 (1975). Following this reasoning, several courts have declined to apply DR 5-105(D) on the basis of appearances alone when the facts of the case indicated that the individual attorney did not have access to confidential information. See, e.g. Silver Chrysler-Plymouth, Inc. v. Chrysler Motors Corp., 518 F.2d 751 (2d Cir. 1975)."
Terry at 714.
While the parties agree that the "common sense" approach should be applied, they disagree as to the result that follows from application of that approach.
Petitioner points to cases such as Silver Chrysler-Plymouth, where the consideration is whether the firm at issue is large or small and whether there could be effective screening of the disqualified member from the rest of the firm. Petitioner contends that application of the "common sense" approach to these facts compels disqualification because this is a small, three-person firm and there can be no effective screening of Copeland from the other members of the firm.
Respondents take the position that a common-sense approach to these facts compels a finding of no disqualification. They say, "Mr. Copeland, under the law and the facts, had no actual knowledge or participation in any substantially related litigation so as to disqualify him, and any knowledge imputed to him as a member of the district attorney's staff cannot be further imputed to his present law partners." Implicit in the use of the common-sense approach is the idea that the imputed knowledge that a lawyer carries with him to a new firm is not automatically imputed to the members of the new firm.
In an unpublished opinion of the Alabama State Bar Disciplinary Commission, 81-557, a similar situation was addressed. A lawyer at a large firm concentrating in defense work was moving to a firm concentrating in plaintiff's work. He questioned under what circumstances he and the new firm would be disqualified. The Disciplinary Commission said:
 "Neither you nor any member or associate of the [new] firm . . . may continue to represent any party in a matter in which you participated or were familiar with while an associate of the [old] firm. . . . The members and associates of the [new] firm . . . may continue representation in pending cases in which you did not participate and as to which you acquired no knowledge while an associate of [the old firm], but you personally may not take part in any matters wherein the two firms heretofore represented opposing interests.
 "We do not feel that your leaving the [old] firm . . . and becoming an associate of the [new] firm would necessarily require the latter firm to withdraw from all cases wherein [the old firm] represents adverse parties. To uncompromisingly apply the rule would require us to base a presumption upon a presumption. In other words, we would have to presume that you acquired all of the knowledge possessed by every member and associate of the [old] firm (a fact which we know to be untrue). Then we would have to assume that this knowledge (which you do not possess) would be irrebutably imputed to every member and associate of the [new] firm (a fact which we know to be untrue).
 "In order to avoid even the appearance of impropriety we do not feel that you personally should take part in the handling of any cases for . . . [the new firm] where the [old] firm represented an adverse party while you were an associate of the firm. *Page 1328 
 "True, the test applied by a court in determining whether or not to grant a motion to require an attorney to withdraw from a case may not be the same test that would be applied by [the] Disciplinary Commission in determining whether or not disciplinary sanction should be imposed, nevertheless, we feel that the above-cited authorities are persuasive and, thus, we apply the Rules on 'vicarious disqualifications,' with the above described limitations."
We find the Disciplinary Commission's reasoning persuasive, and we hold that the trial court did not err when it refused to disqualify the entire firm after finding that Copeland "did not play any active part in the prosecution of the Plaintiff or the decision to terminate that prosecution."
The writ of mandamus is denied
WRIT DENIED.
JONES, SHORES, ADAMS and STEAGALL, JJ., concur.